Case 3:20-cv-00303   Document 30   Filed on 09/30/22 in TXSD   Page 1 of 8

United States District Court
Southern District of Texas
**ENTERED**
September 30, 2022
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

## GALVESTON DIVISION

No. 3:20-cv-303

TEMIKA STEVENS, *PLAINTIFF*,

v.

UNITED STATES OF AMERICA
ON BEHALF OF COASTAL HEALTH AND WELLNESS,
A FEDERALLY SUPPORTED HEALTH CENTER, *DEFENDANT*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

Before the court is the United States' motion to dismiss or for summary judgment. Dkt. 23. The court grants the motion.

## I.  Background

The plaintiff, Temika Stevens, was a patient of Coastal Health and Wellness, a federally supported health center with two clinic locations, one in Texas City and another in Galveston. In February 2015, the Joint Commission on Accreditation of Health Care Organizations inspected Coastal's clinics. The Joint Commission identified no deficient infection-control issues at that time and Coastal received full accreditation. But in

February 2018, the Joint Commission conducted another accreditation visit at Coastal's clinics. Coastal failed this inspection. The Joint Commission found that breaches in Coastal's infection-control practices had potentially exposed patients to blood-borne viruses. This prompted an investigation by the Galveston County Local Health Authority, Dr. Philip Keiser.

Following his investigation, Dr. Keiser ordered that any patients who underwent invasive procedures at Coastal between March 1, 2015, and February 3, 2018, be advised to come in for testing for blood-borne viruses. The Galveston County Health District mailed a letter to former Coastal patients advising them that though "to date, no specific infections have been linked to the Coastal," the Health District recommends "you get tested for Hepatitis B, Hepatitis C, and HIV as a precaution."

Stevens was treated at Coastal on July 8, July 26, August 26, and September 30, 2016. After she received the letter from the Health District, she was tested on April 4, 2018, and learned that she was infected with HIV. Notably, she had tested negative for HIV at a routine checkup on March 8, 2016, just four months before her first visit to Coastal. At the same checkup, however, she also tested positive for trichomoniasis and exhibited evidence of having syphilis in the past.

After learning of her HIV infection, Stevens was referred to UTMB

Health's Infectious Diseases Clinic. There she tested positive for chlamydia and was seen by physician's assistant Jeffrey East. *See* Dkt. 23, Ex. H. East's notes reflect his conversation with Stevens:

> She reports only having one sexual partner in the last year. He is in county jail currently. She gave him as a sexual contact to the [Health District]. She visited him and notified him of her HIV diagnosis – he denies being HIV positive. She states she was unaware if he had other sexual partner in the last year while they were seeing each other. I explained that she likely acquired chlamydia from him since she denies having any other partners and this means he was not monogamous.

*Id*. She was treated for both chlamydia and HIV, which resulted in "a nice therapeutic response obtaining a non-detectable viral load" for the latter. Dkt. 23, Ex. I, at 3.

She filed this lawsuit in September 2020.

## II. Legal Standard

The defendant has moved: (1) to dismiss under Rule 12(b)(1) on the ground that the plaintiff has failed to administratively exhaust her claim; and (2) for summary judgment under Rule 56(c) for her failure to show standard of care and causation. Dkt. 23. The court declines to dismiss under Rule 12(b)(1)[1] and will treat the defendant's motion as solely for summary

---

[1] The defendant's 12(b)(1) argument rests on the fact that Stevens filed an administrative claim with the Department of Health and Human Services complaining of contracting hepatitis C rather than HIV. Dkt. 23, Ex. J. This appears to the court to have likely been a typographical mistake by Stevens's

judgment.

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). The movant bears the burden of presenting the basis for the motion and the elements of the causes of action on which the nonmovant will be unable to establish a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to offer specific facts showing a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the

---

counsel, who also represents several Coastal patients who tested positive for hepatitis C. *See, e.g., Ledermann v. United States*, Nos. 3:19-cv-280/285/312, 2021 WL 3033390 (S.D. Tex. July 19, 2021), *aff'd*, 2021 WL 5751434 (5th Cir. Dec. 2, 2021) (per curiam). The Federal Tort Claims Act's notice requirement is satisfied so long as it "includes (1) sufficient information for the agency to investigate the claims, and (2) the amount of damages sought." *Santiago-Ramirez v. Sec'y of Dep't of Defense*, 984 F.2d 16, 19 (1st Cir. 1993) (construing 28 U.S.C. § 2675). Courts approach this notice requirement "leniently, 'recognizing that individuals wishing to sue the government must comply with the details of the law, but also keeping in mind that the law was not intended to put up a barrier of technicalities to defeat their claims.'" *Id.* (quoting *Lopez v. United States*, 758 F.2d 806, 809 (1st Cir. 1985). The court finds the notice requirement was satisfied in this instance.

nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

The burden of surviving summary judgment is not satisfied "with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by 'only a scintilla of evidence.'" *Patty v. United States*, No. H-13-3173, 2015 WL 1893584 at *4 (S.D. Tex. April 27, 2015) (quoting *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994)). The court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *United States v. Hous. Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

### III. Analysis

Stevens brings this action under the Federal Tort Claims Act. 28 U.S.C. § 2671, *et. seq.* But because her substantive claim is for medical malpractice, "[s]tate law controls." *Hannah v. United States*, 523 F.3d 597, 601 (5th Cir. 2008). Under Texas medical-malpractice law, Stevens "must prove four elements: (1) a duty to comply with a specific standard of care; (2) breach of the standard of care; (3) an injury; and (4) a causal connection between the breach and the injury." *Ledermann*, 2021 WL 3033390, at *2 (citing *Coronel v. Providence Imaging Consultants, P.A.,* 484 S.W.3d 635, 638 (Tex. App.—El Paso 2015, pet. denied)).

Proving causation in a medical-malpractice case requires expert testimony. *Jelinek v. Casas*, 328 S.W.3d 526, 533 (Tex. 2010). Stevens relies on the report of her expert, Dr. Harry F. Hull. Dkt. 23, Ex. M. Dr. Hull notes in his report that "HIV is most commonly spread through sharing of intravenous drug paraphernalia and through sex with an HIV[-]infected person." *Id.* at 3. He opines that because Stevens denies intravenous drug use, "has had only one sexual partner, who denied being HIV positive," and had "no other potential HIV exposures" after testing negative in March 2016, "it is more likely than not that she acquired her HIV infection from being exposed to improperly sterilized dental instruments" at Coastal. *Id.* at 2, 3.

The defendant also retained a causation expert—Dr. Richard J. Hamill. In his report, Dr. Hamill notes that "HIV transmission within dental clinics is exceedingly rare" and that "the only reported cases of transmission have involved dentists who were infected with HIV." Dkt. 23, Ex. I, at 3. He does not believe Stevens was infected with HIV at Coastal. *Id.* at 4. He bases this belief on the following factors: (1) "[n]ext to parenteral drug use, sexual transmission is the most effective mode of acquisition of HIV infection," Stevens has suffered from other sexually transmitted diseases, "and we do not know the HIV status of her sexual partner(s)"; (2) acquiring HIV in the healthcare setting "is decidedly rare"; and the treatment Stevens received at

Coastal in 2016 was closer in time to the inspection it passed in 2015 than to the inspection it failed in 2018. *Id.*

Dr. Hull's opinion that Stevens was likely infected with HIV at Coastal depends entirely on the idea that the deficient infection-control practices discovered by the Joint Commission in February 2018 were also present when she was treated in July, August, and September 2016. But Stevens's treatment was as close in time to the inspection Coastal passed in 2015 as it was to the one it failed in 2018. The summary-judgment record contains no evidence of Coastal's infection-control practices at the time Stevens was treated there. Neither Dr. Hull nor the plaintiff's standard-of-care expert, Dr. Steven Vaughan,[2] mentions any of the professionals who attended Stevens at Coastal or the specific instruments they used in treating her, much less the sterilization techniques applied to those instruments in 2016. And neither attempts to explain exactly how Stevens was infected during her dental treatment.

"It is not enough for an expert simply to opine that the defendant's negligence caused the plaintiff's injury. The expert must also, to a reasonable degree of medical probability, explain how and why the negligence caused

---

[2] Though the court does not reach the standard-of-care issue, it has found the arguments the defendant makes in support of that ground also relevant to the issue of causation.

the injury." *Jelinek*, 328 S.W.3d at 536. The explanation that Stevens's experts have offered, however, amounts to little more than conjecture. And that's not enough. See *Bowles v. Bourdon*, 219 S.W.2d 779, 785, 148 Tex. 1, 10 (1949) ("'The proof must establish causal connection beyond the point of conjecture.'" (quoting *Ramberg v. Morgan*, 218 N.W. 492, 498 (Ia. 1928))). As Stevens has failed to raise a genuine issue of material fact on the essential element of causation, the court grants the defendant's motion for summary judgment.

\* \* \*

The court grants the motion for summary judgment. Dkt. 23. Final judgment will be entered separately.

Signed on Galveston Island this 30th day of September, 2022.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE